### FULDNER v. TRIEB et al.

(Supreme Court, Appellate Term. February 9, 1911.)

1. SHIPPING (§ 56*)—BUFFET PRIVILEGE—CONTRACTS—BREACH.

Where the charterers of a steamer during a celebration leased to plaintiff the exclusive privilege of selling eatables, cigars, candies, etc., on the steamer between September 25 and October 9, 1909, inclusive, except on October 1st, and on the morning of September 30th plaintiff and his employés were refused permission to go on the boat or sell wares thereon on that day, such refusal constituted a breach of the contract, and was not justified because plaintiff's exclusion was the act of the owners of the boat.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 126; Dec. Dig. § 56.*]

2. SHIPPING (§ 58*)—PRIVILEGE CONTRACT—BREACH—DAMAGES.

The charterers of a steamer leased to plaintiff the privilege of selling eatables, cigars, candies, etc., on the steamer from September 25 to October 9, 1909, except on October 1st, but breached the contract on September 30th by excluding plaintiff and his employés from the steamer. *Held* that, plaintiff having deposited $50 to secure his performance of the contract, and having paid $20.80 for a license to sell liquors on the boat, was entitled to recover the deposit, nine-fourteenths of the sum paid for his liquor license, and wages paid his employés for the day on which they were excluded from the vessel.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 58.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. SHIPPING (§ 58*)—PRIVILEGE CONTRACT—BREACH—DAMAGES.

Where, on breach of a privilege contract on a vessel, certain of plaintiff's employés who were paid by the day were taken from New York to Tarrytown, where they were landed, and returned to New York by train, and no reason was shown for their leaving the boat, or why they did not return to New York on the boat that night, plaintiff was not entitled to recover as an item of damage for defendants' breach of contract the amount paid for their railroad transportation.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 58.*]

4. SHIPPING (§ 58*)—PRIVILEGE CONTRACT—BREACH—DAMAGES.

In an action for breach of a vessel's privilege contract by excluding plaintiff from the vessel on one of the days he was entitled to sell goods thereon, plaintiff could not recover for damage to his dishes and the trunk in which he kept them, alleged to have been damaged after the breach, in the absence of proof of the condition in which the articles were when they were left by plaintiff on the boat, and that defendant was in some manner responsible for their damaged condition when plaintiff obtained them.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 58.*]

5. SET-OFF AND COUNTERCLAIM (§ 36*)—DEMANDS NOT MATURED.

A contract granting to plaintiff the exclusive privilege of selling eatables, cigars, candies, etc., on a steamer during a celebration, provided that defendants should receive 33⅓ per cent. of subrents of the candy and souvenir privileges. Plaintiff sublet such privileges for $150, taking the sublessee's note therefor. *Held*, in an action by plaintiff for defendants' breach of the contract, that defendants were entitled to counterclaim their interest in the note, though uncollected, in the absence of proof that it was uncollectible.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 65–69; Dec. Dig. § 36.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Edward W. Fuldner against Otto Trieb and another. From a Municipal Court judgment in favor of plaintiff, defendants appeal. Reversed, and new trial ordered.

Argued before HENDRICK, LEHMAN, and DELANY, JJ.

William H. Siebrecht, Jr., for appellants.
William B. Stites, for respondent.

HENDRICK, J. The parties to this action entered into a written agreement, on September 14, 1909, by the terms of which the defendants sold to the plaintiff the exclusive privilege of selling eatables, cigars, candies, etc., upon the steamer Sea Gull, during the Hudson-Fulton celebration, which celebration it is conceded extended from September 25 to October 9, 1909, inclusive. After the contract had been executed, one of the defendants inserted therein the words "except October 1st," thereby excluding the plaintiff from exercising his privilege upon that day. Those words were inserted with the consent of the plaintiff; the parties having agreed that upon October 1st the steamer had been chartered by other parties. It was not stated in the contract where the boat was to start from, or where it was to go; but it was shown upon the trial that the boat was to make trips among the war vessels then lying in the North River. It also appeared that the boat was scheduled to leave the pier at 131st street on the morning of

September 25th, and that thereafter the captain of the boat would inform the plaintiff, the night before each trip, from what point the steamer would leave the next morning. The plaintiff went aboard the boat at this pier every morning from September 25th to September 29th, inclusive. On the evening of September 29th the captain of the boat informed the plaintiff that he could not go upon the boat the next day, and on the morning of September 30th the plaintiff, upon going to the pier at 131st street with his supplies and help, found that the boat had gone to Newburg upon an excursion with a fire company. Three of plaintiff's employés, who had remained on board all night, were taken along. They were not allowed to sell anything upon the boat, and it seems that they left the boat at Tarrytown, from which place the plaintiff paid their railroad fare to New York City. Plaintiff did not attempt to further exercise his privileges under the contract, but brought this action for the breach thereof, and recovered judgment for $132.73.

By the terms of the contract the defendants must be held to have assured to the plaintiff the continuous daily use of the boat privileges from September 25th to October 9th, excepting the day of October 1st, and when the plaintiff was deprived of his privileges on September 30th it was a breach of contract on the part of the defendants. The defendants contracted, and impliedly warranted, that the plaintiff should have the privilege of catering to the patrons of the boat during the time specified, and they cannot relieve themselves from damages for a breach of such contract by urging that the act of the owners of the boat in thus depriving the plaintiff of his rights was unwarranted. The only question to be determined is whether or not the plaintiff has proven the proper elements of damage and in an amount to equal the judgment obtained. As items of damage, the plaintiff testified that at the time the contract was made he deposited the sum of $50 with the defendants for the faithful performance of the same by him; that he paid $20.80 for a license to sell liquors, which was good only upon the Sea Gull; that he paid $12.40 railroad fare for transporting three employés from Tarrytown to New York City and paid each of said employés $3 for wages for the day of September 30th; that he bought $34.80 worth of dishes for use on the boat, of which but $5 or $6 worth were returned to him; that he paid $8.75 to a carpenter to build a trunk to keep his supplies in; and that when this trunk was returned to him it was broken and worthless. He also testified, in answer to a question put by defendants' counsel as to what his average daily profits were, that they were $15 per day.

It will be seen that the plaintiff's privilege extended over a period of 14 days. The items of $50 deposit, nine-fourteenths of the sum paid for his license, and $9 paid for wages to three employés for September 30th were legitimate items of damage, and were properly proven. These items amounted to $71.39. The item of railroad transportation was not shown to have been necessarily expended, and would also seem to be exorbitant. The employés left at Tarrytown, were paid by the day, and it does not appear why they left the boat at that place, or why they did not remain on the boat and return with it at night. The

damages to dishes was not properly proven, and the same may be said as to the trunk. What condition those articles were in at the time they were left on the boat by the plaintiff was not shown, nor was it shown that the defendants were in any manner responsible for their damaged condition when the plaintiff obtained them. As to the item of daily profits of $15 per day, it appears that the total receipts for the five days that the plaintiff sold supplies on the boat were $82.90. Of this one-third was paid to the defendants as their commissions, leaving $65.27 as the total receipts from sales belongnig to the plaintiff. How a daily profit of $15 is to be obtained from this amount is incomprehensible. The contract also provided that the defendants should receive 33⅓ per cent. "on subrents for the candy and souvenir privileges." It was shown that the plaintiff sublet these privileges for the sum of $150, taking a note therefor, which at the time of the trial had not been paid. It was not shown that the note was uncollectible, and, if good, the defendants are clearly entitled to $50 as a counterclaim to plaintiff's cause of action.

It will be seen from the foregoing that the judgment must be reversed.

Judgment reversed, and new trial ordered, with costs to appellants to abide the event. All concur.